IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | |
|---|---|
| JOY MILLER SWONKE § | |
| § | |
| v. § | CIVIL ACTION NO. G-02-460 |
| § | |
| JO ANNE B. BARNHART, § | |
| COMMISSIONER OF SOCIAL SECURITY § | |

## REPORT AND RECOMMENDATION

Before the Court is Plaintiff Joy Miller Swonke's action pursuant to Section 205(g) of the Social Security Act for a review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying a claim for supplemental benefits under the Act. This action was originally brought for insurance and income benefits by Allen Ray Nash, the common-law husband of Plaintiff. A claim for underpayment of income benefits is payable to the spouse of a deceased claimant. 20 C.F.R. §§ 416.1471(b) and 416.542(b). Both parties have filed Motions for Summary Judgment. After considering the parties' briefs and the record in this case, the Court submits its Report and Recommendation to the District Court.

### Background

Nash filed his application for benefits on July 18, 1995, and on January 20, 1998, alleging that he had become disabled as of February 26, 1993. He claimed that he was unable to work due to various orthopedic problems, gastrointestinal distress, coronary artery disease (including coronary bypass surgery), chronic depression and various related problems. The SSA denied his application at the first two levels of administrative review, and Nash requested a hearing before an

Administrative Law Judge ("ALJ"). A hearing was held, and the ALJ found on February 25, 2000, that Nash was not disabled. Seven months later, Nash died after undergoing his second coronary bypass surgery. The ALJ's decision was affirmed by the Appeals Council on May 17, 2002, making th ALJ's decision the Commissioner's final decision.

The record in this case shows that Nash experienced a long history of injury and illness. The ALJ stated that Nash suffered a single accident "in 1996 or 1997." Transcript ("Tr.") at 25. In reality, a motorcycle accident in March, 1976, together with a car accident in 1981, left him with a reconstructed right foot, right knee, and left ankle as well as breaks in both shoulders, both hips, the left tibia, jaw, and tailbone. Nash continued to suffer from pain in his lower back and neck.

In 1993, he developed serious cardiac disease. On March 4, 1993, Nash received a pacemaker to stabilize his heartbeat and two weeks later underwent a triple coronary bypass. He was hospitalized later that year for severe chest pain. Several subsequent hospitalizations for chest pain and dizziness ensued over the next few years, and his subclavian vein became infected in November, 1997. In February, 1998, Nash's pacemaker was removed after he suffered an infection, and a stent was inserted in his left subclavian vein after he developed stenosis and thrombosis in it. He was hospitalized for chest pain again in July, 2000, when a pacemaker was again inserted. He died in October of that year after undergoing a second triple bypass. As noted below, Nash also suffered from serious depression, dermatological, and gastrointestinal problems.

In finding that Nash was not disabled, the ALJ determined:

>   1. The claimant met the special earnings requirements of the Social Security Act on February 26, 1993, the date he stated he became disabled, and continued to meet them through the date of this decision.

2. The claimant has not engaged in substantial gainful work since the alleged onset date of disability.

3. The claimant has coronary artery disease (status post three vessel bypass surgery in March[,] 1993 with implantation and removal of a pacemaker), degenerative changes of the spine and left ankle, esophageal reflux, a history of skin lesions, and a depressive disorder, but these impairments do not meet or equal in severity the requirements of any of the medical listings in Apendix 1, Subpart P, Regulations No. 4.

4. The claimant's testimony was not fully credible or consistent with the record considered as a whole.

5. The claimant has the residual functional capacity ["RFC"] to lift and carry 10 pounds frequently and 20 pounds occasionally, stand and walk 6 hours of an 8 hour workday, sit 8 hours of a workday, and occasionally bend, stoop, and crawl. He is restricted to tasks that allow the use of a cane in the right dominant hand and access to a lavatory at will. He is restricted to a climate controlled and low stress work environment doing tasks involving simple to detailed, but not complex, job instructions, minimal (occasional) contact with the public, and no customer service.

6. The claimant does not have the residual functional capacity to perform his past relevant work as an instrument technician, an instrument supervisor, and a swimming pool servicer.

7. The claimant is 48 years of age, defined as a younger individual.

8. The claimant has a high school equivalency education.

9. The claimant does not have skills that readily transfer to jobs within his functional capacity.

10. Based on the testimony of the vocational expert, and using Rule 202.21, Appendix 2, Subpart P, Regulations No. 4, as a framework for decision making, jobs which the claimant is able to perform exist in significant numbers in the national economy. Examples of such jobs include assembler of small products, optical goods, electrical accessories, plumbing hardware, and lawn and garden equipment.

11. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision.   Tr. at 30-31.

**Discussion**

A federal court reviews the Commissioner's denial of benefits only to ascertain whether (1) the final decision is supported by substantial evidence and (2) the Commissioner used the proper legal standards to evaluate the evidence. Brown v. Apfel, 192 F.3d 172, 173 (5th Cir. 1999). A court may not reweigh the evidence or try the issues de novo. Johnson v. Bowen, 864 F.2d 340, 343-344 (5th Cir. 1988). Conflicts in the evidence are for the Commissioner, not the Court, to resolve. Brown, 192 F.3d at 496.

Substantial evidence is defined as being more than a scintilla and less than a preponderance and of such relevance that a reasonable mind would accept it as adequate to support a conclusion. Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995). If the Commissioner's findings are adjudged to be supported by substantial evidence, then such findings are conclusive and must be affirmed. Id. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343-344.

A claimant is disabled within the meaning of the Social Security Act if he has a medically determinable physical or mental impairment lasting at least 12 months that prevents him from engaging in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). To determine whether an individual is disabled, the Commissioner utilizes the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(b)-(f). If the Commissioner decides at any step along the way that an individual is not disabled, the evaluation process comes to a halt at that particular step and proceeding further becomes unnecessary. Barajas v. Heckler, 738 F.2d 641, 643 (5th Cir. 1984). Additionally, only if the final step in the process is reached does the fact-finder consider the claimant's age, education, and work experience in light of his or her residual functional capacity. See Rivers v. Schweiker, 684 F.2d 1144, 1152-1153 (5th Cir. 1982).

The Treating Physician and RFC Issues

Plaintiff first alleges that the ALJ failed to give proper weight to medical source statements from three of Nash's treating physicians: Drs. Incalcaterra, Sharma, and Price. She also objects to the ALJ's failure to consider records of Nash's 2000 hospitalization following a heart attack. Ordinarily, the opinions of treating physicians are given considerable weight in determining disability, though less weight can be given if good cause is shown. *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001). This is especially true when the treatment period has been over a considerable period of time. *Perez v. Schweiker*, 653 F.2d 997, 1001 (5th Cir. 1981). Good cause includes conclusory statements from the treating physician, opinions otherwise unsupported by the evidence, or conclusions unsupported by medically accepted clinical techniques. *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000).

Both parties agree that the opinions of Drs. Sharma and Price were submitted after the ALJ issued her opinion. Dr. Sharma is a specialist in internal medicine who treated Nash for rheumatoid arthritis and provided a report stating that he was limited to work substantially less than the ALJ found Nash able to perform. Tr. at 615ff. Dr. Sharma's records indicate that he only began treating Nash after the ALJ issued her decision. Dr. Price wrote a letter in July, 2000, after Nash suffered another heart attack and urged that his current medical condition be considered. Tr. at 673.

The Fifth Circuit has stated that "subsequent medical evidence is relevant . . . because it may bear upon the severity of the claimant's condition before the expiration of his or her insured status." *Ivy v. Sullivan*, 898 F.2d 1045, 1049 (5th Cir. 1990). However, remand to consider new medical evidence is available only if the evidence is material and a claimant can show good cause why it was not submitted to the ALJ. 42 U.S.C. § 405(g). "Material" in this context means that the evidence must be relevant to the period for which benefits are claimed and not merely show the subsequent

5

deterioration in a previously non-disabling condition. *Haywood v. Sullivan*, 888 F.2d 1463, 1472 (5th Cir. 1989).

Nash's insured period expired in December, 1999. The records at issue here are new and were obviously not available for submission to the ALJ. But they do not meet the materiality requirement, as they all relate only to Nash's condition after the ALJ issued her opinion. The records of Nash's hospitalization clearly indicate a dramatic deterioration in his heart functioning, but neither these records nor any of the other evidence submitted refer to Nash's physical condition prior to the ALJ's decision. Plaintiff argues in this regard that these documents indicate that Nash's cardiac disease "recurred." Plaintiff's Brief at 19. There is no question that it not only recurred but became much worse. However, that in itself does not meet the materiality standard. *Wyatt v. Secretary of HHS*, 974 F.2d 680, 685 (5th Cir. 1992). In addition, Dr. Sharma's records only indicate Nash's functioning as of June, 2000, and do not even purport to claim that he was equally impaired by arthritis prior to December, 1999.

The ALJ considered several items submitted by Dr. Incalcaterra, who treated Nash for a number of years. Plaintiff points to three source statements. Plaintiff's Motion at 32. First, an October 16, 1993, entry from Dr. Incalcaterra notes that Nash had bronchitis and recently had a heart attack. This note, however, is irrelevant to Plaintiff's case because it states that Nash had been released to "full activity." Tr. at 486. The second is a 1998 entry stating that Nash could not lift or bend because of shoulder pain and that he is depressed "99% of the time." Tr. at 498. The third is a letter to Nash's attorney stating that he suffered from various orthopedic problems and was required to rest for periods of thirty minutes, twice a day; otherwise, he would not be able to work forty hours a week. Tr. at 543. Dr. Incalcaterra also wrote a letter dated August 24, 1998, stating that Nash had been depressed since 1993 and that he was "disabled." Tr. at 496.

6

The ALJ was not required to give weight to Dr. Incalcaterra's statements that Nash was disabled because such conclusions are not medical opinions and are reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(1). The ALJ discounted all of Dr. Incalcaterra's medical conclusions about Nash, though she did not state what weight she gave to them. She relied exclusively on an alleged absence of objective laboratory evidence and invoked the contrary opinion of medical expert Dr. Duran, who did not examine Nash. In doing so, the ALJ ignored the long-settled rule that "[m]edically acceptable evidence includes observations made by a physician during physical examination and is not limited to the narrow strictures of laboratory findings or test results." *Robinson v. Barnhart*, 248 F. Supp.2d 607, 625 (S.D. Tex. 2003) (quoting *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000)); *see also Ivy*, 898 F.2d at 1048-49. Dr. Incalcaterra personally examined and treated Nash over a period of time beginning at least from October, 1993. The record shows that he was obviously well aware of many of the test results the ALJ invokes.

Under 20 C.F.R. § 416.927(d)(2), consideration of a treating physician's opinion must be based on: (1) the physician's length of treatment of the claimant, (2) the physician's frequency of examination, (3) the nature and extent of the treatment relationship, (4) the support of the physician's opinion afforded by the record, (5) the consistency of the opinion with the record, and (6) the treating physician's specialty. Where there are gaps or deficiencies with regard to a treating physician's diagnosis or opinion, the ALJ is obliged to develop the record fully by seeking additional information or explanations from the treating physician before rejecting the opinion. Id. at 457-58; 20 C.F.R. § 416.912(d). Social Security Ruling 96-2p specifically states that even when treating source opinions are not given controlling weight, they "are still entitled to deference and must be weighted using all of the factors provided in 20 C.F.R. 404.1527 and 416.927." "If the ALJ does not satisfy his duty, his decision is not substantially justified." Newton, 209 F.3d at 458.

At best, the ALJ complied only with the fourth and fifth of the six requirements of § 404.1527(d)(2). Any contradiction in the medical records is to be resolved by the ALJ. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). However, the ALJ did not rely on conflicting medical evidence to reject either Dr. Incalcaterra's statements or those of treating physician Dr. Ramesh Hariharan, who stated in June, 1998, that Nash could not exercise because of his chronic pain. Tr. at 306. Although Plaintiff does not specifically complain about the ALJ's consideration of Dr. Hariharan, the Court notes that it is no better supported than Dr. Incalcaterra's.

Instead, the ALJ relied primarily on the conflicting opinion of the testifying medical expert as the primary basis for her repeated claim that there was a conflict in the medical record. In doing so, she invoked the authority of *Ransom v. Heckler*, 715 F.2d 989 (5th Cir. 1983). This case provides little support for the ALJ's position. *Ransom* merely held that an ALJ could rely on the testimony of a non-examining review physician as support for an equivalency determination, but it specifically stated that this was not necessarily true when, as here, the judge was making a RFC determination. *Id*. at 993.

In light of this shortcoming, the ALJ's RFC determination also requires reconsideration. RFC is what can still be done in light of present severe impairments and limitations. Determining RFC is part of the Commissioner's decision at the fourth step as to whether a claimant's incapacity prevents him from performing past relevant work. In this case, the ALJ relied heavily on the medical expert's evaluation of the record, although she also made ample citations to the record that showed that Plaintiff's heart functioning was sufficient to engage in substantial levels of activity. If the ALJ had provided proper reasons for her evaluation of the treating physicians' reports, the Court would be required to say that the RFC assessment is supported by substantial evidence. However, it is difficult to understand how the current RFC conclusion can be supported when the ALJ did not provide proper grounds for rejecting the physicians' reports that directly contradict her assessment.

Plaintiff's objection that the ALJ failed to consider whether Nash could maintain his employment over time is without merit. The Fifth Circuit has held that this requirement applies only when a claimant alleges that his condition is intermittent and waxes and wanes over time. *Frank*, 326 F.3d at 619. That is not the case here.

The Court therefore **RECOMMENDS** that Plaintiff's Motion be **GRANTED** and Defendant's Motion be **DENIED** on the RFC issue and the medical expert issue as it relates to the medical opinions of Drs. Incalcaterra and Hariharan.

<u>The Psychiatric Issue</u>

Plaintiff next argues that the ALJ incorrectly assessed the severity of Nash's depression. The ALJ found that Nash's psychiatric complaints required a low-stress job without complex tasks and that he not have more than occasional contact with the public. Tr. at 31. Plaintiff first claims that the ALJ overlooked the fact that Nash had been hospitalized for psychiatric problems. This claim is without merit and itself overlooks Nash's own denial of this allegation in the hearing. Tr. at 60. She next states that testimony by Nash and his mother established that his depression was more severe than the ALJ concluded. However, Nash was examined twice by psychiatrist Dr. Syed Ahmed in connection with his claim for disability benefits. Dr. Ahmed concluded that Nash was depressed but that he was coherent and could organize his thoughts well. Tr. at 238, 320-21. Treatment notes from the VA hospital in May, 1998, report that Nash's depression had "half improved" with medication. Tr. at 352. Indeed, in December, 1998, the VA psychiatrist stated that he planned to refer Nash to "vocational rehab" in order to find a different job. Tr. at 342. By September, 1999, Nash's VA doctors reported that his depression was controlled with medication. Tr. at 508. Substantial evidence therefore supports the ALJ's conclusion concerning the severity of Nash's depression.

The Court **RECOMMENDS** that Plaintiff's Motion be **DENIED** and Defendant's Motion be **GRANTED** on the psychiatric issue.

The Pain Issue

Plaintiff next argues that the ALJ improperly assessed Nash's level of pain, claiming that it was unresponsive to treatment and was therefore disabling. According to Plaintiff, the ALJ improperly discounted Nash's testimony about his pain and failed to give reasons for her credibility finding. An ALJ must consider testimony concerning pain and indicate her credibility determination and the basis for it. *Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. 1981). An ALJ's finding is entitled to great deference but must be supported by substantial evidence. *Newton*, 209 F.3d at 459. Pain can be disabling in and of itself, but it must be linked to a medical impairment that would reasonably be expected to give rise to the kind of pain complained of by a claimant. *Carry v. Heckler*, 750 F.2d 479, 485 (5th Cir. 1983).

Nash described his pain at a level of seven or eight out of ten at least four to five times a week. Tr. at 56. He stated that the pain in his right hip is so severe that he almost collapses at times. Tr. at 57. He also described significant shoulder pain. Contrary to Plaintiff's claim, the ALJ gave ample reasons for her refusal to find Nash's subjective complaints fully credible. She pointed to numerous test results concerning his joint pain and noted that Nash had failed to keep several doctor's appointments. Tr. at 28. She also noted that the testifying medical expert described Nash's pain medications as reflective of only mild to moderate paint. Dr. Duran testified that Nash's history of pain medication did not support the degree of pain he claimed. Tr. at 83. The medical expert also pointed out that Nash's physicians noted in 1994 that his chest pain did not suggest myocardial ischemic pain and that he could only speculate about what the cause of the pain was. Tr. at 78-80. The expert stated that his complaints of pain were "compatible" with the physical findings in the record but that they were not "consistent" with them. Tr. at 81.

Based on this record, substantial evidence supports the ALJ's evaluation of Nash's subjective testimony concerning pain, and the Court **RECOMMENDS** that Plaintiff's Motion be **DENIED** and Defendant's Motion be **GRANTED** on this point.

<u>The Impairment Duration Issue</u>

Plaintiff next alleges that the ALJ erred in not finding that Nash's heart problems and chest pain precluded him from working for twelve months from February, 1993 to March, 1994. As noted above, not all pain is disabling, and the ALJ's credibility determination concerning Nash's subjective complaints is supported by substantial evidence. Notably, Nash did return to work periodically before his pacemaker was inserted in March, 1993, and he then worked until July, 1993. In order to meet the duration requirement, Plaintiff must show not only that Nash could not perform his previous work for twelve consecutive months but that he could not engage in *any* substantial gainful activity for that period of time. *Neal v. Bowen*, 829 F.2d 528, 530 (5th Cir. 1987). Plaintiff has not done so here.

The Court **RECOMMENDS** that Plaintiff's Motion be **DENIED** and Defendant's Motion be **GRANTED** on this issue.

**Conclusion**

The Court RECOMMENDS that the Plaintiff's Motion for Summary Judgment (Instrument No. 18) be GRANTED IN PART and that Defendant's Motion for Summary Judgment (Instrument No. 22) be DENIED IN PART. The Court further RECOMMENDS that the ALJ's decision be REVERSED and REMANDED to the Social Security Administration for further consideration consistent with this opinion.

The Clerk shall send copies of this Report and Recommendation to the parties by the means in place for transmission of same. The parties shall have until July 6, 2005, in which to have written objections, filed pursuant to 28 U.S.C. § 636(b)(1)(C), physically on file in the Office of

the Clerk.  <u>The Objections shall be mailed to the Clerk's Office in Galveston, Texas 77553 at P.O. Drawer 2300</u>.  Any Objections filed shall be contained in a written document specifically entitled "Objections to the Report and Recommendation of the Magistrate Judge", which will then be forwarded to the District Judge for consideration.  Failure to file written objections within the prescribed time shall bar the aggrieved party from attacking on appeal the factual findings and legal conclusions accepted by the District Judge, except upon grounds of plain error.

      **DONE** at Galveston, Texas, this _____23rd_____ day of June, 2005.

                                                      John R. Froeschner
                                                    United States Magistrate Judge